IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO.: 2:19-CV-00110 (WOB-CJS)

KELLY MIDDLETON                                                                      PLAINTIFF

VS.

WAYNE D. LEWIS, ET AL.                                                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

  Plaintiff Kelly Middleton, superintendent of Newport Independent School District (NISD), alleges that Defendants Kentucky Department of Education (KDE) and Advance Education, Inc. (AdvancED) defamed him when KDE released a materially misleading audit report to the public. The matter is now before the Court on Defendants' motions to dismiss. (Doc. 6 and Doc. 10). For the reasons set forth below, the Court concludes Plaintiff has standing but fails to state a claim upon which relief can be granted

*Factual and Procedural Background*

  State law requires Defendant KDE to periodically evaluate Kentucky's public schools to determine which schools need improvement. KRS § 160.346(3). KDE designates the underperforming schools in these evaluations as "comprehensive support and improvement" (CSI) schools, after which an audit is performed to discover and address the causes of low performance. KRS § 160.346(5). The local board of education selects a team to audit the schools that has "documented expertise in diagnosing the causes of an organization's low performance and providing advice and strategies resulting in effective turnaround leadership." *Id.* If the local board cannot find a suitable audit team, it can ask the KDE to audit the school. *Id.*; 703 KAR § 5:280.

1

In 2018, several schools in the NISD underperformed during the periodic evaluations and thus were designated as CSI schools. (Doc. 1 at ¶ 15). KDE contracted with Defendant AdvancED, a non-profit educational organization, to perform the required audits. (*Id.* at ¶¶ 15-17). AdvancED performed the audits and delivered a twenty-eight-page audit report to KDE. (Doc. 6-2). This report contained a "detailed diagnostic analysis" of NISD's leadership and learning resources and included a list of NISD's strengths and weaknesses. (*See* Doc. 6-2). The report does not name Plaintiff, but concludes the following with respect to "District Leadership":

> District Leadership does not have the capacity to implement the identified improvement priorities. The Review Team's findings indicate a vast disconnect between district office and schools in terms of the level of support required to ensure all students' needs are being met. There are significant concerns in regards to the district's ability to establish an atmosphere of trust, support, and openness necessary to build relationships with school personnel to improve their academic standing.

(Doc. 6-2 at 31). KDE adopted the conclusions in the report and released it to the public via various news outlets. (*Id.*; Doc. 1 at ¶ 28). Plaintiff suffered no adverse employment action and still serves as NISD's superintendent. (Doc. 1 at ¶ 3).

Plaintiff filed suit against two groups of defendants in their individual and official capacities: KDE and several of its employees (the KDE Defendants), and AdvancED and several of its employees (the Audit Defendants).[1] Plaintiff argues that the audit was performed inadequately, and that he was not given an opportunity to challenge the materially false audit report before it was published. He alleges (1) deprivation of property without due process of law in violation of

---

[1] Wayne Lewis, Kelly Foster, Julia Rawlings, Norma Lawless, Sam Watkins, and Michael Murphy are collectively referenced herein as "KDE Defendants." Lewis and Foster worked as KDE commissioners, and Rawlings and Lawless worked as "Education Recovery" members to help improve NISD's evaluation scores before the audit. (Doc. 1 at ¶¶ 6-7). Watkins spent time working for KDE as an Education Recovery member but also served on the audit team. (*Id.* at ¶ 10). The complaint alleges that Murphy was a member of the audit team (*Id.* at ¶ 12) but he is represented by counsel representing KDE Defendants and is named in KDE Defendant's Motion to Dismiss. (Doc. 6 at 2). Consequently he will be treated as a KDE Defendant. AdvancED, George Griffin, and Jesse Bacon are collectively referenced herein as "Audit Defendants." Both Griffin and Bacon were employees of AdvancED and helped audit NISD.

2

the Fourteenth Amendment, (2) breach of contract, (3) defamation/libel, (4) nonfeasance, and (5) malfeasance. (*See* Doc. 1).

*Analysis*

1. **Legal standard for motion to dismiss under FRCP 12(b)(6).**

To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible upon its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). While the Court construes the complaint "in favor of the complaining party" and presumes the general allegations "encompass the specific facts necessary to support" the claim, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971).

2. **Plaintiff has standing because the complaint alleges reputational harm that infringes on his ability to work as a superintendent.**

All Defendants argue that Plaintiff does not have standing. Standing is a jurisdictional "threshold matter" that must be established before the Court reaches the merits of a case. *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 94 (1998). Standing requires the party bringing suit to show they (1) suffered an "injury in fact," (2) that is "fairly traceable" to the alleged actions of the defendants, (3) which is likely to be redressed by a favorable judicial decision. *Lujan,* 504 U.S. at 560.

First, all Defendants argue Plaintiff did not suffer an injury in fact. "Injury in fact" requires Plaintiff's alleged injuries to be "concrete and particularized" and "actual and imminent," not "conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560).

3

Some of the alleged injuries likely do not qualify as injury in fact. The complaint alleges Plaintiff's "ability to obtain future speaking and writing engagements" is "likely" hindered and that the audit report "could" be used as grounds to fire him. (Doc. 1 at ¶¶ 31-32). Words such as "could" and "likely" indicate such harms are hypothetical; Plaintiff has not yet been fired and has not yet been denied speaking and publication opportunities.

On the other hand, the complaint alleges "[r]eputational injury" which can be "sufficient to establish an injury in fact" if it leads to cognizable injury. *Parsons v. U.S. Dep't. of Just.*, 801 F.3d 701, 711 (6th Cir. 2015); *Meese v. Keene*, 481 U.S. 465, 474 (1987). Cognizable injury can consist of impairment to the ability to practice a chosen profession. *Meese*, 481 U.S. at 473 (finding that reputational damage impairing the ability to practice a profession constituted injury in fact). Here, the complaint alleges the audit report caused "immediate and irreparable reputational damage harm" to Plaintiff in his capacity as an "educational leader." (Doc. 1 at ¶ ¶ 31-32). These injuries allegedly render Plaintiff "unemployable as a Superintendent" and damaged him emotionally and financially. *Id.* Taking these allegations as true, the report has negatively affected Plaintiff's finances and his ability to work in his chosen profession as a superintendent. While the complaint does not explain in detail the financial harm or how Plaintiff's ability to work as a superintendent has been hindered, the Court must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 104. Issues concerning how Plaintiff will prove these allegations are not appropriate at the motion to dismiss stage. *Id.*

KDE and KDE Defendants separately argue NISD is the only party that can challenge the audit's conclusions and thus the complaint raises third-party standing issues. This argument fails. While the complaint does allege the audit findings are materially false, Plaintiff has alleged these

4

material falsehoods caused him reputational and financial damage. These are injuries that implicate his personal legal rights and interests, not only the rights and interests of NISD.

Audit Defendants alternatively argue that Plaintiff does not have standing to sue because his alleged injuries are not "fairly traceable" to their actions. According to Audit Defendants, Plaintiff's injuries arise solely from KDE's publication of the audit report. While Audit Defendants performed the audit and supplied a report of that audit to KDE, they did not participate in the report's distribution.

This argument is unavailing. For purposes of standing, "fairly traceable" means more than "speculative but less than but-for." *Parsons*, 801 F.3d at 714. Thus injury occuring "indirect[ly] does not destroy standing as a matter of course." *Id.* at 713. While KDE published the report, the complaint alleges Audit Defendants did not follow the established procedures and processes for conducting effective audits (Doc. 1 at ¶ 21) and relied on untruthful statements made by disgruntled employees rather than conducting in-depth interviews of neutral employees. (*Id.* at ¶ 23). While Plaintiff's alleged injuries are certainly tied to the publication of the report, an important contributing factor to his injuries was that the report was false in the first place. As Audit Defendants drafted that report, their actions are "fairly traceable" to Plaintiff's injuries.

In sum, the complaint alleges personal reputational harm that damaged Plaintiff's finances and his ability to work as a superintendent. These harms, while not well-delineated by the complaint, are sufficent to establish injury in fact at this stage. Additionally, Audit Defendants contributed to these injuries by peforming an inadequate audit and drafting a materially misleading report. Defendants' motions to dismiss for lack of standing will be denied.

3. **While Plaintiff has standing, Plaintiff's § 1983 claim will be dismissed because he did not suffer a deprivation of a property interest that implicates due process concerns and Audit Defendants are not state actors.**

5

In addition to lack of standing, all Defendants contend Plaintiff's § 1983 claim should be dismissed under FRCP 12(b)(6) for failure to state a claim. KDE and KDE Defendants assert they are entitled to immunity in their official capacities from this claim; Audit Defendants argue they were not state actors and thus cannot be held party to a § 1983 action. All Defendants alternatively contend that Plaintiff was not deprived of a right that implicates § 1983. Each of these arguments are taken in turn.

### a. Eleventh Amendment Immunity – KDE and KDE Defendants

Defendant KDE and KDE Defendants first argue that Plaintiff's § 1983 claim against them in their official capacities should be dismissed because they are entitled to Eleventh Amendment immunity. This immunity "applies to claims under § 1983, meaning that states and state officials sued in their official capacity are not considered 'persons' under § 1983 and, therefore, cannot be sued for money damages without the state's consent." *Thomas v. Noder-Love*, 621 F. App'x 825, 831 (6th Cir. 2015). Defendant KDE is a state agency and thus is entitled to Eleventh Amendment immunity. *J.B.F. v. Kentucky Dep't of Educ.*, No. 5:15-CV-33-REW, 2016 WL 3167546, at *6 (E.D. Ky. 2016); *Cullens v. Bemis*, 979 F.2d 850, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992). KDE Defendants are being sued in their official capacity and are thus also entitled to Eleventh Amendment immunity as the "bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 105 S. Ct. 3099, 3107 (1985).

However, Plaintiff argues that Eleventh Amendment immunity does not apply under the doctrine of *Ex parte Young*. The doctrine of *Ex parte Young* presents a narrow exception to Eleventh Amendment immunity by allowing a suit seeking prospective injunctive relief to "end a continuing violation of federal law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73-76

6

(1996) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)); *VOPA v. Stewart*, 563 U.S. 247, 260 (2011).

The problem with this argument is that there must be a violation of federal law. The only alleged violation of federal law in the complaint is the violation of due process. As is explained below, Plaintiff did not suffer a deprivation of an interest that implicates due process and thus the *Ex parte Young* doctrine is inapplicable. KDE and KDE Defendants are entitled to immunity in their official capacities from Plaintiff's § 1983 claim.

### b. Deprivation of Property in Violation of Due Process – All Defendants

All Defendants argue that Plaintiff did not suffer the deprivation of a right that implicates § 1983. To bring a § 1983 claim, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Here, the sole basis for Plaintiff's § 1983 claim is a deprivation of property without due process. (Doc. 1 at 12). The complaint alleges that all Defendants "arbitrarily deprived the Plaintiff of his right to property without due process" (Doc. 1 at ¶ 36) and goes on to identify "damage to his professional reputation, as well as emotional and financial harm." (*Id.* at ¶ 37). Consequently, the complaint indicates Plaintiff's due process claims are solely based on his damaged reputation and the resultant harms.

While not a property interest, a person's reputation is a liberty interest that implicates due process concerns. *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002). However, "defamation alone is not enough to invoke due process concerns." *Quinn*, 293 F.3d at 319; *Paul v. Davis*, 424 U.S. 693, 711 (1976). Rather, the defamation must be tied to an alteration of a "right or status

previously recognized by state law." *Paul*, 424 U.S. at 711. In situations where a public employer defames a public employee, this alteration of a "right or status" generally entails the termination of the employee. *See Ferencz v. Hairston*, 119 F.3d 1244, 1249 (6th Cir. 1997) (holding that the publication of defamatory comments did not deprive plaintiffs of a liberty interest because "interest in reputation alone…is 'quite different' from the liberty interest that the Due Process Clause protects" (quoting *Paul*, 424 U.S. at 711); *Christian v. Belcher*, 888 F.2d 410, 417 (6th Cir. 1989) (explaining that due process concerns are implicated when a public employer voluntarily disseminates false information in the course of a decision to terminate an employee).

Here, Plaintiff does not allege that he has been fired or that his employment status has changed, and thus his injuries do not trigger due process concerns. Rather, "his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions." *Paul*, 424 U.S. at 712. The complaint does not allege any other basis for a §1983 claim, and thus this count will be dismissed with respect to all Defendants in all capacities. [2]

### c. State Action – Audit Defendants

Lastly, Audit Defendants argue even if there were a due process violation, the § 1983 claim against them should be dismissed because they are not state actors. Section 1983 only applies to deprivations of rights caused by state action. *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). The fact that AdvancED is a private company is not decisive in determining whether they were state actors; circumstances may exist

---

[2] Both sets of Defendants alternatively argue that even if there were a due process violation, they are entitled to qualified immunity. However, as the complaint fails to adequately state a § 1983 claim, it is unnecessary to reach the issue of qualified immunity.

whereby the action of a private entity is deemed state action for purposes of a § 1983 claim. *See Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). While recognizing that several exceptions do exist, Audit Defendants argue none of these exceptions apply.

Audit Defendant's argument is well-taken. Accepting the complaint's allegations as true, Audit Defendants' actions were not state action under any previously recognized exception to the state action requirement. First, under the public function exception, a defendant who performs a duty traditionally reserved exclusively to the state may qualify as a state actor. *See, e.g., Terry v. Adams*, 345 U.S. 461 (1953). For this exception to apply, the complaint must contain "historical and factual allegations" that the fulfillment of the duty is the exclusive prerogative of the state. *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014). The audit of underperforming schools is not such a duty. Kentucky law contemplates that KDE will outsource the audits to private teams, indicating such duties are not the exclusive prerogative of the state. KRS § 160.346(5)(a); 703 KAR § 5:280. Furthermore, Plaintiff does not present any authority or argument indicating a school audit is the exclusive prerogative of the state or why it should be considered so. Consequently this exception does not apply.

The next exception, referred to as the state compulsion exception, applies when the state exercises overwhelming coercive power over the private actor such that the "choice of the private actor is deemed to be that of the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). Here, Audit Defendants performed an audit and wrote a report detailing their conclusions. The complaint does not allege that KDE supervised Audit Defendants in such a manner that KDE was effectively conducting the audit; it indicates that KDE contracted for Audit Defendants to perform the audits independently. Furthermore, the complaint alleges that Audit Defendants failed to follow the audit procedures and processes established by KDE. (Doc. 1 at ¶ 21). That

9

Audit Defendants were not following state protocol demonstrates the audit was performed independently from state influence. Plaintiff presents no reason to conclude otherwise, and thus this exception does not apply.

Lastly, under the nexus exception, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky*, 960 F.2d at 1335. The Sixth Circuit has held that the existence of a contract between a government agency and a private defendant is insufficient to establish the required nexus, even if the contractual relationship subjects the private actor to an "extensive and detailed" set of requirements. *Id.* at 1336. Plaintiff again fails to present argument to the contrary, and thus this exception does not apply.

In sum, defamation alone does not implicate due process, and thus the complaint fails to state the first element of a § 1983 claim. Additionally, KDE Defendants in their official capacities are entitled to Eleventh Amendment immunity as there was no violation of federal law. Finally, Audit Defendants cannot be considered state actors. For these reasons, Plaintiff's § 1983 claim will be dismissed against all Defendants in all capacities.

**4.    Plaintiff's state law claims will be dismissed because KDE Defendants are entitled to immunity in their official capacities and the complaint fails to plead sufficient facts to state each claim.**

   **a. KDE Defendants are also entitled to Eleventh Amendment immunity against Plaintiff's state law claims.**

As set forth above, Defendant KDE and KDE Defendants in their official capacities are entitled to Eleventh Amendment immunity with respect to Plaintiff's § 1983 claim. However, this immunity "also bars any pendent state-law claims brought against state officials in their official capacity" that seek money damages. *Thomas v. Noder-Love*, 621 Fed. Appx. 825, 831

(6th Cir. 2015). Here, Plaintiff's pendent state law claims seek money damages against KDE Defendants in their official capacity, and thus KDE Defendants in their official capacities are entitled to immunity for those state law claims.

Defendant KDE and KDE Defendants in their official capacities are also entitled to Kentucky governmental immunity from Plaintiff's state law claims.[3] Kentucky governmental immunity gives immunity from lawsuits seeking money damages to "state agencies that perform governmental functions" that "are supported by money from the state treasury." *Autry v. W. Kentucky U.*, 219 S.W.3d 713, 717 (Ky. 2007); *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001). If a state agency merits governmental immunity, officers or employees of the state agency sued in their official or representative capacity are entitled to official immunity. *Autry,* 219 S.W.3d at 717; *Jones v. Cross*, 260 S.W.3d 343, 345 (Ky. 2008). As set forth above, KDE is a state agency and KDE Defendants are being sued in their official capacity as officers and employees for KDE. Thus they are all entitled to governmental and official immunity if they were performing a "governmental function."

In Kentucky, operating public schools is a governmental function. *Clevinger v. Bd. of Educ. of Pike Cty.*, 789 S.W.2d 5, 10-11 (Ky. 1990) ("[P]ublic schools are a responsibility of the state…school funds are the funds of the Commonwealth[.]"); *Wallace v. Laurel Cty. Bd. of Educ.*, 153 S.W.2d 915, 916 (Ky. 1941) ("[E]very common school in the state is a state institution controlled and regulated by the state…a city in maintaining its public school system is acting in a governmental capacity."). Here, Plaintiff sues KDE and KDE Defendants for overseeing an audit of several schools in an underperforming school district and publishing the

---

[3] "Federal courts must apply state substantive law, including immunities, when dealing with supplemental state law claims in federal court." *See generally Erie R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938); *Shepherd v. Floyd County, Kentucky*, 128 F. Supp. 3d 976, 980 (E.D. Ky. 2015).

11

audit report to the public. Kentucky statute requires KDE and KDE Defendants to effectuate these audits to help improve the quality of education in Kentucky's public schools. KRS § 160.346; 703 KAR § 5:280. These actions are quintessential examples of governmental functions, and thus Defendant KDE and KDE Defendants are entitled to Kentucky governmental and official immunity from Plaintiff's state law claims.

While KDE Defendants in their official capacity are entitled to official immunity, Plaintiff is also suing them in their individual capacity. In Kentucky, state actors sued in their individual capacity are eligible for qualified official immunity. *Autry*, 219 S.W.3d at 717. Qualified official immunity provides immunity to public officers or employees if their actions are "discretionary" as opposed to "ministerial." *Id; Yanero*, 65 S.W.3d at 522. However, even if an act is discretionary, there is no qualified official immunity if it is "done willfully or maliciously with intent to harm, or if it is committed with a corrupt motive or in bad faith." *Autry*, 219 S.W.3d at 717.

At this stage, in interpreting the complaint in a light most favorably to Plaintiff, KDE Defendants in their individual capacities are not entitled to qualified official immunity. KDE Defendants directed the Audit Defendants who to interview, assisted in finding and collecting management data, and released the audit report to the public. (Doc. 1 at ¶¶ 21-28). KDE Defendants argue all these actions were purely discretionary. Even if all these actions were purely discretionary, the complaint alleges that KDE Defendants were not acting in good faith when they took these actions. For example, Plaintiff alleges that KDE Defendants disregarded important information that contradicted the audit report and published the report after indicating to Plaintiff another audit would take place before any official conclusions were drawn. (Doc. 1 at ¶¶ 27-28). The complaint also alleges that KDE Defendants supplied disgruntled employees to

Audit Defendants for interviews, rather than provide neutral employees. (*Id.* at ¶ 22). These types of actions could support a finding that KDE Defendants acted in bad faith in effectuating the audit. Consequently KDE Defendants are not entitled to qualified official immunity at this stage.

In sum, Defendant KDE and KDE Defendants in their official capacities are entitled to Eleventh Amendment and Kentucky governmental immunity against all of Plaintiff's state law claims as those claims are seeking money damages. However, the state law claims against KDE Defendants in their individual capacities must be analyzed on the merits.

> **b. Plaintiff's state law claims will also be dismissed because the complaint fails to plead sufficient facts to state each claim.**

As set forth above, KDE Defendants in their individual capacities are not entitled to qualified official immunity for Plaintiff's state law claims. Additionally, the various immunities discussed above only apply to claims seeking monetary damages, and the complaint appears to seek injunctive relief as well monetary damages. (Doc. 1 at 16). Audit Defendants are also not entitled to immunity from Plaintiff's state law claims. Accordingly the Court must now analyze whether the complaint adequately alleges facts sufficient to support each state law claim to determine whether such claims should be dismissed against the KDE Defendants in their individual capacity and the Audit Defendants. The Court agrees with the Defendants that the alleged facts are insufficient as a matter of law and thus each claim will be dismissed.

> **i. Breach of Contract**

Plaintiff brings a breach of contract claim on the grounds that he was a third-party beneficiary of the contract between KDE and AdvancED. (Doc. 1 at ¶¶ 41-42). Third parties who can enforce a contract fall into two categories: donee beneficiaries and creditor beneficiaries. *Sexton v. Taylor County*, 692 S.W.2d 808, 810 (Ky. App. 1985). However, for either category, "it must be proven that the contract in question was made for the actual and direct benefit of the

13

third party." *Id.* Thus an "incidental beneficiary" cannot enforce a contract. *Presnell Constr. Managers, Inc. v. EH Constr., LLC,* 134 S.W.3d 575, 579 (Ky. 2004).

Here, the allegations at best make Plaintiff an incidental beneficiary. Plaintiff did not participate in any of the contract negotiations between the parties and is not even named in the audit report. Rather, the complaint alleges the contract was executed with the intention of fulfilling a statutory duty and to conduct a diagnostic analysis of NISD rather than to provide a direct benefit to Plaintiff. (Doc. 1 at 2). While the audit could have provided some type of incidental benefit in the form of a positive job review or a list of NISD's needed improvements, Plaintiff was simply not contemplated as a beneficiary of the contract. Thus Plaintiff's breach of contract claim will be dismissed against all Defendants.

    ii.  **Defamation and Libel**

Plaintiff also brings a defamation and libel count against all Defendants. A prima facie case of defamation in Kentucky requires (1) defamatory language, (2) about the plaintiff, (3) which is published, and (4) which causes injury to reputation. *Williams v. Blackwell*, 487 S.W.3d 451, 454 (Ky. App. 2016). However, language that is pure opinion is "absolutely privileged" and "occurs where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based." *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989).

Here, the alleged defamatory statement was in the form of a comprehensive, diagnostic audit report [4] spanning twenty-eight pages that disclosed all facts for the basis of AdvancED's opinions. The report explains its findings were based on forty-two interviews that the audit team

---

[4] On a motion to dismiss, the Court may consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Natl. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The audit report is referred to numerous times in the complaint and is central to the claims therein, and thus the Court may analyze the audit report.

14

conducted with administrators, staff members, students, and parents; forty-nine observations conducted using a classroom observation tool; and student performance data from the Kentucky Performance Rating for Educational Progress tool (K-PREP). (Doc. 6-2 at 3, 7, 15). The report directly quotes what individuals said during interviews, and directly cites the K-PREP results. (*Id.* at 13, 15, 22-27). In short, all statements within the report were grounded on facts cited and fully disclosed in the report, and thus cannot serve as the basis for a defamation claim. *See Williams*, 487 S.W.3d at 451-53 (holding that the opinion drawn from the audit of a sheriff's office did not defame plaintiff because it "very clearly articulated all of the facts upon which the opinion was based"). As the report was published in conjunction with all evidence upon which the opinions were drawn, the audit report is privileged.

Additionally, the complaint does not allege Audit Defendants had "actual malice." In order to recover damages for "a defamatory falsehood relating to his official conduct," a public official[5] must prove "that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Merely alleging that the statement was negligently made is not enough to meet this standard. *Yancey*, 786 S.W.2d at 859.

Here, Plaintiff alleges that he provided proof to KDE Defendants that the audit report was false and thus arguably pleads that the KDE Defendants knew they were publishing a false statement. However, he does not allege that he provided any such proof to the Audit Defendants, but rather only that they failed to conform to the processes and procedures established for audits and did not consider all information that Plaintiff gave them. (Doc. 1 at 10). This is more akin to negligence and does not meet the "actual malice" standard. *Yancey*, 786 S.W.2d at 859.

---

[5] A superintendent is considered a public official. *See Linton v. Streetsboro City Sch. Dist. Bd. of Educ.*, 162 Fed. Appx. 532, 538 (6th Cir. 2006).

In sum, the audit report cannot serve as the basis for the defamation claim, and Audit Defendants are not alleged to have acted with actual malice. Plaintiff's libel and defamation claims will be dismissed.

### iii. Nonfeasance and Malfeasance

Plaintiff's last causes of action allege nonfeasance and malfeasance against Defendants Rawlings and Lawless in their personal capacity.[6] (Doc. 1 at 14-15). Kentucky courts in the past have construed nonfeasance and misfeasance actions as negligence actions. *Cottongim v. Stewart*, 142 S.W.2d 171, 177 (1940); *see Jenkins v. Best*, 250 S.W.3d 680, 694 (Ky. App. 2007). Furthermore, this portion of the complaint alleges duty, breach, causation, and damages, which are the elements of a negligence action in Kentucky. *James v. Meow Media, Inc.*, 300 F.3d 683, 689 (6th Cir. 2002). Thus the Court analyzes these claims as negligence claims.

Plaintiff alleges Defendants Rawlings and Lawless owed a duty to prepare Plaintiff for the audit. (Doc. 1 at ¶¶ 49, 53). However, the scope of employment of these defendants along with the statutory scheme indicate that no such duty existed. The statutory scheme does not impose a duty to help a superintendent prepare for an audit, but rather requires monitoring and periodic review to "improve student outcomes." *See* KRS § 160.346; 703 KAR § 5:280(5); 20 USC § 6311. The defendants also worked as members of the "Education Recovery" team, showing they were concerned mainly with improving the educational experience of the students. While such efforts failed as the schools ultimately received a CSI designation and were audited, these defendants were never under an obligation to prepare Plaintiff personally for the audit. Plaintiff does not provide any authority or argument indicating he was owed a common law duty

---

[6] Defendants Rawlings and Lawless are no longer employed at KDE. Accordingly, they cannot be sued in their official capacity. FRCP 25(d)(1); *Graham*, 473 U.S. at 166.

16

to help prepare for an audit, or why such duty should exist. Accordingly any negligence claim will be dismissed.

With respect to the malfeasance claim, malfeasance is defined as "the doing, either through ignorance, inattention or malice, of that which the officer had no right to do." *Cottongim*, 142 S.W.2d at 177. Kentucky has a criminal statute that criminalizes misconduct of a public official if that misconduct is taken while in office. KRS § 61.170; *see also* KRS § 522.020. To the extent that Plaintiff seeks to enforce criminal malfeasance, this cause of action must be dismissed because a private citizen cannot bring a criminal action. *Hall v. Thompson*, 3:16-CV-P476-DJH, 2016 WL 6963045, at *7 (W.D. Ky. 2016). However, if Plaintiff means malfeasance as simply a "wrongful or unjust doing of some act which the doer has no right to perform," this claim sounds in negligence, which is addressed above. *Bailey v. Com.*, 790 S.W.2d 233, 235 (Ky. 1990); *Cottongim*, 142 S.W.2d at 177. Accordingly, Plaintiff's nonfeasance and malfeasance counts will be dismissed.

### *Conclusion*

Therefore, having reviewed this matter, and the Court being otherwise advised, **IT IS ORDERED** that Defendants' Motions to Dismiss (Doc. 6 and Doc. 10) are **granted** dismissing all of Plaintiff's claims under FRCP 12(b)(6) for failing to state a claim upon which relief can be granted.

This 15th day of April 2020.



Signed By:
*William O. Bertelsman* WOB
United States District Judge